UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60700-CIV-GAYLES/SELTZER

VERDEX CONSTRUCTION, LLC,

Plaintiff,

vs.

GREAT AMERICAN INSURANCE COMPANY,

Defendant.
_________________________________/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** has come before the undersigned upon the Order [DE 7] referring all pre-trial matters to the Magistrate Judge for appropriate disposition or recommendation pursuant to 28 U.S.C. § 636(b)(1)(A). Plaintiff, Verdex Construction, LLC ("Verdex") has filed a Motion for Summary Judgment [DE 10] that is fully briefed. After review of the Motion, the Complaint, and the parties' memoranda of law, the undersigned **RECOMMENDS** that Verdex's Motion for Summary Judgment [DE 10] be **GRANTED IN PART and DENIED IN PART.**

## I. BACKGROUND

This is an action by Verdex against Great American Insurance Company ("Great American") for indemnification on a Subcontractor Payment Bond [DE 6]. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. Verdex is the general contractor on a construction project known as Sabbia Beach Condominium ("the Project"), which is located in Broward County, Florida. Division III is a concrete and masonry subcontractor on the Project. Great American issued a Subcontractor Payment Bond to its principal,

Division III, for work done on the Project [DE 18-3]. Verdex alleges that Division III failed to pay its lower tier subcontractors and suppliers, and those subcontractors and suppliers made claims against Verdex and its surety for payment. Verdex claims that it has paid or, alternatively, has received claims for payment from Division III's lower tier subcontractors and suppliers and, therefore, seeks indemnification under the Subcontractor Payment Bond [DE 6]. Great American has denied liability to Verdex under the Subcontractor Payment Bond and has asserted nine separate affirmative defenses, including release, set off, and breach of the bonded subcontract [DE 14].

## II. MOTION FOR SUMMARY JUDGMENT

Verdex filed a Motion for Summary Judgment [DE 10] shortly after filing its Amended Complaint for Indemnification Under Payment Bond [DE 6] and before Great American filed its Answer and Affirmative Defenses [DE 14]. Verdex seeks summary judgment construing the Payment Bond's indemnification provisions to require Great American to reimburse Verdex the costs incurred by Verdex as a result of claims that were made against Verdex by Division III's unpaid subcontractors and suppliers relating to the project, and awarding Verdex its damages for Great American's refusal to pay.

Great American contends that summary judgment is inappropriate on several grounds. First, Great American asserts that Verdex failed to pay Division III the amounts due to it, thereby breaching the bonded subcontract and, thus, the Payment Bond.[1] Second, Great American argues that Verdex was paid by the project owner for Division III's

---

[1] Division III has sued Verdex and its surety in Broward County Circuit Court, seeking payment it claims is due under the bonded subcontract, Division III Group Corp. v. Berkshire Hathaway Specialty Ins. Co., Seventeenth Judicial Circuit Case No. 18-CACE-006761.

work, and, instead of paying Division III as it was contractually obligated to, Verdex used those funds to pay Division IIIs subcontractors and suppliers directly and, thus, Verdex sustained no damages. Third, Great American claims that certain payments made by Verdex to Division III's subcontractors and suppliers did not arise under the subcontract and, thus, were not covered by the Payment Bond. Fourth, Great American asserts that Division III has paid and obtained releases and settlement agreements from several lower tier suppliers and, therefore, any indemnity claims as to those suppliers is eliminated. And, finally, Great American argues that summary judgment is premature in that discovery has not yet taken place. [DE 16].

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.' " Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010).[2] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." Hickson

[2] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259–60 (11th Cir. 2004). "Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs., 818 F.3d 1122, 1138 (11th Cir. 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. SEC v. Monterosso, 756 F.3d 1326, 1333 (11 Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1050 (11 Cir. 2015).

A. Facts Alleged by Verdex

Verdex filed an affidavit of its manager, Rex Kirby [DE 10-2] ("Kirby"). Kirby asserts that when Division III failed to pay its lower tier subcontractors and suppliers, the subcontractors and suppliers made claims for payment against Verdex and its surety. Kirby testified that Verdex made demand upon Division III and Great American to pay the claims, but the claims were not paid. Verdex paid some of those claims,[3] and it asserts

[3] Verdex made payments directly to the following subcontractors/suppliers of Division III: Cemex ($181,749.48); Allegiance Crane ($284,955); SunCoast PT ($134,945.13); Florida Concrete Unlimited ($13,243.75); MD Concrete ($49,507.50); and MP Firestop ($17,026.87-2, pp. 13-14].

that other claims for payment remain pending.[4] Verdex has filed a summary of the claims that it paid and those that it claims are pending, the Notices of Non-Payment, and the claims of lien submitted by Division III's lower tier subcontractors and suppliers. [DE 10-2]. Accordingly, Verdex has established that it paid $681,427.73 to certain of Division III's lower tier subcontractors and suppliers. Verdex contends that it is entitled to payment under the Subcontract Payment Bond for all amounts it paid to Division III's subcontractors and suppliers and for all amounts that remain due and owing.

B. Facts Alleged by Great American

Great American submitted the affidavit of Rafael Gutierrez ("Gutierrez"), a Project Executive for Division III Group Corp. ("Division III"), who has been involved in the Project since 2016 [DE 18]. Gutierrez declared that the Subcontract between Division III and Verdex required Verdex to make monthly progress payments to Division III [DE 18-2, p.4], but that Division III's payment applications have been unpaid by Verdex since August 2017, despite the fact that the Project owner paid Verdex for the work done by Division III. Additionally, Verdex has been holding ten percent (10%) of the Subcontract amount as retainage from the payments that Verdex did make to Division III [DE 18-2, p. 4]. In total, Verdex is holding $686,030 for work that is included in the Subcontract and $1,146,000 in retainage. Further, Gutierrez states that pursuant to the Subcontract, Division III agreed to permit Verdex to pay the claims by joint checks to Division III and its subcontractors and suppliers, but Verdex did not make the payments by joint checks.

---

[4] Verdex asserts that following claims remain unpaid: Cemex ($42,105.33); Florida Concrete Unlimited ($175); MD Concrete ($ 12,000); MP Firestop ($1,671.88); Doka, Ltd. ($32,033.97); G. Proulx ($72,164.780); Safeway Service ($81,978.88); John Abell ($19,092.80): and HD Supply/White ($4,660.07) [DE 10-2, p. 69].

Gutierrez also attested that certain amounts that Verdex alleges remain unpaid were, in fact, paid by Division III and, further, that Division III secured final releases in favor of Verdex and the Project owner for those claims [DE 18, Ex. D].[5] Additionally, Gutierrez states that certain payments made by Verdex were for work that did not arise under the Subcontract or were disputed amounts. Specifically, Gutierrez stated that $121,306.25 of Verdex's payments to Allegiance Crane & Equipment, LLC ("Allegiance Crane") arose under an Assignment and Assumption Agreement whereby Verdex extended Allegiance Crane's services for seven months beyond Division III's obligation to provide crane services under the Subcontract [DE 18, ¶ 19]. Great American also disputes the validity of the $61,507.50, payment which Verdex made to MD Concrete under the Subcontract, and asserts that MD Concrete's Notice of Non-Payment claimed only $12,000, which amount Division III paid [DE 18, ¶ 20].

C. <u>The Subcontractor Payment Bond</u>

The Subcontractor Payment Bond issued by Great American [DE 18-6] states, in relevant part, as follows:

> [S]ubcontractor has entered into a written Subcontract with Contractor, dated July 13, 2016 . . . to perform, as Subcontractor, certain portions of the work in connection with the Prime Contract, consisting of Job # 16-004; Concrete and Masonry (the "Work") which Subcontract is hereby referred to and made a part thereof.

---

[5] Division III has paid and obtained releases from the following suppliers: Cemex ($42,105.33); Florida Concrete Unlimited ($175); MD Concrete ($ 12,000); MP Firestop ($1,671.88); Doka, Ltd. ($32,033.97); G. Proulx ($72,164.780); Safeway Service ($81,978.88); John Abell ($19,092.80): and HD Supply/White ($4,660.07) [DE 18, Ex. D] and [DE 26].

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if Subcontractor promptly makes payment to all persons supplying labor, material, or equipment in the prosecution of the Work provided for in the Subcontract . . . and shall indemnify and save harmless the Contractor and Contractor's surety of and from and all loss, damage, and expense, including costs and attorney's fees, which Contractor or Contractor's surety may sustain by reason of Subcontractor's failure to do so, then this obligation shall be null and void; otherwise it will remain in full force and effect. . . .
>
> * * *
>
> Subcontractor and Surety agree that they will indemnify, and hold harmless Contractor and Contractor's surety, if any, on the subject project, for claims for payment of labor, materials or equipment arising under the Subcontract, and that it is their intent that their liability under this Bond shall be primary to any such claims which may also be asserted against Contractor or Contractor's surety, if any. . . .
>
> Subcontractor and Surety agree that they will defend Contractor and Contractor's surety, if any, on the subject project, from any claims for payment of labor, materials, or equipment arising under the Subcontract.
>
> Subcontractor and Surety agree that this Bond shall inure to the benefit of all persons supplying labor, materials or equipment in the prosecution of the Work provided for in the Subcontract, as well as to the Contractor and Contractor's surety, and that such persons may maintain independent actions upon this Bond in their own names. . . .
>
> When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the Subcontract was or is to be performed, any provision of this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions confirming to such statutory or other legal requirements shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond where applicable.
>
> * * *

[DE 18-3].

D. DISCUSSION

The language of a payment bond governs its interpretation. Fisk Elec. Co. v. Travelers Cas. and Sur. Co., 2009 WL 196032, at *2 (S.D. Fla. Jan. 23, 2009). The Subcontractor Payment Bond (set forth above) clearly provides that Division III and Great American, as surety, will indemnify and hold harmless Verdex for the payment of any claims for labor, materials, or equipment arising under the Subcontract. The affidavit of Verdex makes clear that it has incurred $681,427.73 in expenses and costs for payments made to unpaid lower tier suppliers of Division III. Great American does not dispute that, for the most part, the payments made by Verdex were for the payment of claims for labor, materials, or equipment arising under the Subcontract.[6] Indeed, Great American agrees that all of Division III's subcontractors and suppliers have been paid, either by Verdex or by Division III. Great American, however, argues that there exists a genuine dispute of material fact as to whether there was a breach of the underlying Subcontract that would preclude Vertex from recovering under the Subcontractor Payment Bond. In essence, Great American argues that because Verdex has not paid Division III all amounts due under the Subcontract, Verdex is not entitled to indemnification or payment by Great American for the amounts it paid to Division III's subcontractors and suppliers. The undersigned disagrees.

The Subcontract "is referred to and made a part" of the Payment Bond. "It is a generally accepted rule of contract law that, where a writing expressly refers to and

[6] Great American does contest that the $121,306.25 payment made by Verdex to Allegiance Crane arose under the Subcontract and the validity of the $49,507.50 paid to MD Concrete.

sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." OBS Company v. Pace Construction Corp., 558 So.2d 404, 406 (Fla. 1990). All of the writings are to be construed together to determine the intent of the parties. See Frontier Ins. Co. In Rehabilitation v. M C Management, Inc., 2009 WL 1374544, at *2 (W.D. Ky. May 15, 2009) (applying Kentucky law). Yet, nothing in the Subcontract makes the Payment Bond conditional upon Verdex making payments to Division III. As such, whether Verdex or Division III breached the Subcontract is not relevant to the issues before this Court. See Frontier, 2009 WL 1374544, at * 3 (holding that surety's obligation to pay under a payment bond was not conditional upon owner's payment to contractor).

In any event, Division III is not entitled to be paid under the Subcontract until it has supplied proof that it has paid its subcontractors and suppliers:

> D. Progress Payments will be made subject to the following conditions precedent:
>
> * * *
>
> 5. SUBCONTRACTOR has provided evidence satisfactory to CONTRACTOR that each of its subcontractors, suppliers and laborers has been paid for all labor, services, materials, and suppliers used in the performance of the Work through the date of the requisition for such payment . . . .

[D18-2, p. 4]. Great American's argument that Verdex cannot collect under the Payment Bond until it pays Division III would render the Payment Bond moot: If Verdex had paid Division III, then the lower tier subcontractors and suppliers would necessarily have been paid; Verdex would not have needed to pay them; and there would have been no claims to be brought against the Payment Bond. Accordingly, whether there was a breach of the

Subcontract – that is, whether Verdex paid Division III all amounts due -- is not an issue of material fact that would preclude summary judgment for Verdex under the Payment Bond.

Likewise, the fact that Verdex failed to issue joint checks to Division III and its subcontractors and suppliers is not a condition of the Payment Bond and does not, therefore, preclude summary judgment for Verdex. Similarly, Great American's argument that Verdex cannot recover from the Payment Bond because it paid Division III's subcontractors and suppliers with money obtained from the Project's owner fails for the same reason. The Payment Bond does not condition Great American's obligations upon the source of funds used by Verdex to pay claims by lower tier subcontractors and suppliers. That Verdex may have been paid by the Project owner does not preclude summary judgment for Verdex under the Payment Bond.

Great American, however, has raised a genuine dispute of material fact as to whether the payments made by Verdex to Alliance Crane arose under the Subcontract so as to be covered by the Payment Bond. Great American has submitted evidence that $121,306.25 of the amount paid to Allegiance Crane was for work done after Division III's crane work was finished and was, in fact, performed by Allegiance Crane under an Assignment and Assumption Agreement with Verdex [DE 18, ¶ 19]. This is a genuine dispute of material fact for trial and, accordingly, the undersigned recommends that summary judgment be denied as to the payments made by Verdex to Allegiance Crane.

Likewise, Great American has raised a genuine dispute of material fact as to whether the $61,507.50 paid by Verdex to MD Concrete arose under the Subcontract by submitting proof that MD Concrete's Notice of Non-Payment claimed only $12,000 and that

MD Concrete was actually paid by Division III and executed a Final Release and Satisfaction [DE 10-2, Ex. 1-D].

Finally, Great American has raised a genuine dispute of material fact as to whether any claims remain for those suppliers that Verdex alleges remain unpaid: Cemex ($42,105.33); Florida Concrete Unlimited ($175); MD Concrete ($ 12,000); MP Firestop ($1,671.88); Doka, Ltd. ($32,033.97); G. Proulx ($72,164.780); Safeway Service ($81,978.88); John Abell ($19,092.80): and HD Supply/White ($4,660.07). Great American has submitted proof that these suppliers have been paid in full by Division III and have each executed a Final Release and Satisfaction [DE 18, Ex. D] and [DE 26]. Accordingly, the undersigned concludes that Verdex is not entitled to summary judgment as to those claims.

As a final note, Great American argues that it is premature to entertain a summary judgment motion because discovery has not occurred and the motion was filed before Great American filed its Answer. Rule 56(b) allows a party to move for summary judgment "at any time," and it is not an abuse of discretion in granting a summary judgment prior to filing an answer. Yelder v. U.S. Dept. of Defense, 164 Fed. Appx. 914, n.1 (11th Cir. Jan. 31, 2006). Indeed, the only discovery that Great American asserts it would need is discovery as to which party breached the Subcontract. As discussed above, that fact is not material to the disposition of this matter and, therefore, there is no prejudice to Great American in ruling on this Motion for Summary Judgment.

## III. CONCLUSION

For reasons set forth above, the undersigned concludes that there is no genuine dispute of material fact to prevent the Court from entering summary judgment in favor of

Verdex under the Payment Bond for the payments totaling $346,965.23 that Verdex made to: Cemex ($181,749.48); SunCoast PT ($134,945.13); Florida Concrete Unlimited ($13,243.75); and MP Firestop ($17,026.87). Genuine disputes of material fact, however, do preclude summary judgment on the remainder of Verdex's claims. Accordingly, the undersigned **RECOMMENDS** that Verdex's Motion for Summary Judgment [DE 10] be **GRANTED IN PART and DENIED IN PART**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 13th day of November 2018.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Darrin P. Gayles
Counsel of record