UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60700-CIV-GAYLES/SELTZER

VERDEX CONSTRUCTION, LLC,

    Plaintiff,

vs.

GREAT AMERICAN INSURANCE
COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Great American's Motion to Stay Proceedings Pending Disposition of Parallel State Court Proceedings and Incorporated Memorandum of Law in Support Thereof ("Motion" or "Motion to Stay") (DE 39). The Motion was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida (DE 7). The undersigned has reviewed the file and is otherwise fully advised in the matter. For the reasons set forth below, the undersigned RECOMMENDS that the Motion (DE 39) be DENIED.

I.    BACKGROUND

This lawsuit arose out of the construction of a condominium located at 730 North Ocean Blvd., Pompano Beach, Florida, known as Sabbia Beach Condominium (the "Project"). On April 25, 2016, Fernbrook Florida, LLP (the "Owner") entered into a general contract with Verdex Construction, LLC ("Verdex") for the construction of the Project (the

"Prime Contract"). Verdex, as principal, and Berkshire Hathaway Specialty Insurance ("Berkshire"), as surety, executed and delivered a statutory payment bond to the Owner (the "Contractor's Payment Bond") pursuant to Fla. Stat. § 713.23. Verdex then entered into a subcontract with Division III, whereby Division III agreed to supply and install the concrete and masonry superstructure of the Project (the "Subcontract"). Division III, as principal, and Great American Insurance Company ("GAIC"), as surety, executed and delivered a payment bond to Verdex (the "Subcontractor's Payment Bond"). The Subcontractor's Payment Bond provides that Division III and GAIC, as surety, will indemnify and hold harmless Verdex for the payment of any claims for labor, materials, or equipment arising under the Subcontract.

On March 21, 2018, Division III filed suit in the state court against Verdex and its surety, Berkshire, alleging that Verdex breached the Subcontract, and that Berkshire and Verdex breached the terms of the Contractor's Payment Bond. See Division III Group Corp. v. Berkshire Hathaway Specialty Ins. Co., et al., Seventeenth Judicial Circuit Case No. 18-CACE-006761 ("State Court Action"). On October 1, 2018, Verdex filed its answer and affirmative defenses. And, pursuant to an agreed extension, on December 17, 2018, Verdex filed a counterclaim against Division III for breach of the Subcontract. At that time, Verdex also moved for an extension of time in the state court to bring a claim on the performance bond – as distinct from the payment bond at issue in this federal action – against Division III's surety, GAIC.[1] Division III has moved for an extension of time to

---

[1] The performance bond and the payment bond are different contracts; they contain different obligations and give rise to distinct claims. The performance bond turns on the parties' performance under the Subcontract. By contrast, GAIC's indemnification obligation under the payment bond – the issue involved in this federal action – does not require this

2

January 14, 2019, to answer the counterclaim. The issue, therefore, in the state case is whether Verdex or Division III breached the Subcontract, an issue that will require substantial litigation, including experts. The pleadings in the state court litigation have not yet closed, and the discovery phase has just begun.

On April 2, 2018, Verdex commenced the action in this Court against GAIC for indemnification on the Subcontractor's Payment Bond (DE 6).[2] Verdex alleges that Division III failed to pay its lower tier subcontractors and vendors, and those subcontractors and vendors then made claims against Verdex and its surety for payment. Verdex asserts that it has paid or, alternatively, has received claims for payment from Division III's lower tier subcontractors and vendors and, therefore, seeks indemnification under the Subcontractor Payment Bond (DE 6). GAIC has denied liability to Verdex under the Subcontractor Payment Bond and has asserted nine separate affirmative defenses, including release, set off, and breach of the bonded subcontract (DE 14).

On June 28, 2018, Verdex filed a Motion for Summary Judgment (DE 10).[3] Verdex sought summary judgment construing the Payment Bond's indemnification provisions to require GAIC to reimburse Verdex the costs incurred by Verdex as a result of claims that were made against Verdex by Division III's unpaid subcontractors and vendors relating to

---

Court to determine who breached the Subcontract.

[2] To reiterate, Verdex was the general contractor on the Project, and Division III was a concrete and masonry subcontractor on the Project. GAIC had issued a Subcontractor's Payment Bond to its principal, Division III, for work done on the Project (DE 18-3).

[3] Verdex moved for summary judgment soon after filing its Amended Complaint for Indemnification Under Payment Bond (DE 6) and before GAIC filed its Answer and Affirmative Defenses (DE 14).

3

the project and awarding Verdex its damages for GAIC's refusal to pay. On November 13, 2018, the undersigned issued a Report and Recommendation (DE 32). The undersigned recommended that summary judgment be granted in part and be denied in part. More specifically, the undersigned "conclude[d] that there is no genuine dispute of material fact to prevent the Court from entering summary judgment in favor of Verdex under the Payment Bond for the payments totaling $346,965.23 that Verdex made to [several lower tier vendors]" but that "[g]enuine disputes of material fact . . . do preclude summary judgment on the remainder of Verdex's claims," which remaining claims total $448,696.46 (DE 32 at 11-12). In issuing that Report and Recommendation, the undersigned made clear that whether Verdex or Division III bears responsibility for the breach of the Subcontract – the issue before the state court – has no impact on GAIC's obligations under the Payment Bond for the monies Verdex paid to the lower tier vendors – the issue before this Court. See Report and Recommendation at 9 (DE 32).[4]  Thereafter, GAIC filed

---

[4] In pertinent part, the Report and Recommendation states:

Yet, nothing in the Subcontract makes the Payment Bond conditional upon Verdex making payments to Division III. As such, whether Verdex or Division III breached the Subcontract is not relevant to the issues before this Court. See Frontier [Ins. Co. In Rehabilitation v. M C Management, Inc.], 2009 WL 1374544, at * 3 [(W.D. Ky. May 15, 2009)] (holding that surety's obligation to pay under a payment bond was not conditional upon owner's payment to contractor).

In any event, Division III is not entitled to be paid under the Subcontract until it has supplied proof that it has paid its subcontractors and suppliers: [quoting subcontract]. Great American's argument that Verdex cannot collect under the Payment Bond until it pays Division III would render the Payment Bond moot: If Verdex had paid Division III, then the lower tier subcontractors and suppliers would necessarily have been paid; Verdex would not have needed to pay them; and there would have been no claims to be brought against the Payment Bond.

4

Objections (DE 35) to the Report and Recommendation, which are currently pending before the District Court.

On December 21, 2018, GAIC filed the instant Motion to Stay Proceedings Pending Disposition of Parallel State Court Proceedings (DE 39).[5] On January 11, 2019, Verdex filed Plaintiff's Response to Defendant's Motion to Stay Proceedings ("Response") (DE 44).

The Motion to Stay (DE 39) is now ripe for review.

II.  THE MOTION

GAIC argues that the Court should stay these proceedings pursuant to the Colorado River doctrine because "[a] parallel State Court Action was filed first, will resolve the disputes between the parties in toto, rather than piecemeal, and will adequately protect the parties' rights." Motion at 1 (DE 39). For the reasons set forth below, the undersigned concludes that this case does not present "exceptional" circumstances warranting a stay.

A.  Law

In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), the Supreme Court addressed the circumstances in which federal courts may abstain from exercising their jurisdiction due to the existence of a parallel proceeding in one or more state courts. See also Ambrosia Coal & Constr. Co. v. Pagés Morales, 368 F.3d 1320, 1327 (11th Cir. 2004). But the Colorado River Court also made clear that federal courts

---

Report and Recommendation at 9 (DE 32).

[5] The undersigned notes the instant Motion is actually GAIC's second motion to stay. On July 13, 2018, GAIC filed a Motion to Stay Proceedings for Contractual Mediation in the Bonded Contract as Obtained by Plaintiff, Verdex Construction, LLC ("Verdex") in Corresponding State Court Action (DE 15). GAIC, however, subsequently withdrew that motion (DE 29), and the undersigned entered an order denying the motion as moot (DE 30).

have a "virtually unflagging obligation" to exercise the jurisdiction vested in them by Congress. 424 U.S. 813.  Accordingly, the Court recognized that abstention is to be the exception, not the rule; it is to be exercised only in the most "exceptional" circumstances. Id. at 818.

As a threshold matter, for Colorado River to apply, there must be "federal and state proceedings involv[ing] substantially the same parties and substantially the same issues." Ambrosia Coal, 368 F.3d at 1330 (11th Cir. 2004).  Once the threshold has been met, a federal court considers six factors in determining the propriety of abstention: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.  Id. at 1331. These factors are to be applied flexibly and pragmatically, and no one factor is necessarily determinative.  Id. at 1331-32 (citations omitted).  Additionally, the court should consider "the vexatious or reactive nature of either the federal or the state litigation" in deciding whether abstention under Colorado River is warranted.  Id. at 1331 (citation omitted).

B. Analysis

An analysis of the pertinent factors here makes plain that there are not exceptional circumstances warranting a stay of this federal action.

1. Threshold Issue – Are the Cases Parallel?

The Colorado River analysis is applicable when federal and state proceedings "involve substantially the same parties and substantially the same issues." Id. at 1330. The

6

federal and state proceedings, however, need not contain identical parties, issues, and requests for relief.  Id.

GAIC argues that the state court and federal court actions involve "substantially similar" issues and parties because both actions arise out of the same Subcontract between Verdex and Division III, involve the same parties, and involve of the same substantive claims.  According to GAIC:  "Importantly, as Division III's surety, GAIC's liability for damages to Verdex is coextensive with the liability of Division III under its contract with Verdex.  [A]ccordingly, this Court will be required to evaluate Division III's liability to Verdex before it may impose liability on GAIC - an issue that the parties will concurrently litigate in the State Court Action."  Motion at 6 (DE 39) (citations omitted).  The undersigned does not agree that the issues in the two cases are substantially similar and has previously rejected GAIC's attempt to tie its own indemnification obligations under the Payment Bond to the performance disputes between Verdex and Division III under the Subcontract.

More specifically, at issue in the state action is whether Verdex or Division III breached the Subcontract between them, whereas the instant federal action does not involve either Verdex's or Division III's Subcontract performance.  At issue in the federal court is GAIC's indemnification obligations under the Payment Bond to Verdex as obligee. Additionally, GAIC is not currently a party to the state court case.[6]  The state and federal

---

[6] The undersigned notes that Verdex has proffered that GAIC may become a party to the state court action in the future.  But it has further proffered that such prospective litigation would not involve substantially the same issues as this federal case.  According to Verdex, were GAIC added as a party in the state court litigation, it would involve the Subcontract performance and liability under the Performance Bond, not the indemnification obligations of GAIC under the Payment Bond at issue here.

actions, therefore, are not parallel.  Under similar circumstances, a district court in Georgia held that although a state court action between a contractor and subcontractor and a federal action with the surety concerned the same project, they were not parallel, where the federal action concerned only the indemnity agreement relating to the bond.  See Atl. Mut. Ins. Co. v. Killearn, Inc., 2007 WL 2422041 (N.D. Ga. Aug. 21, 2007).  In pertinent part, the Killearn court wrote: "The Fulton County case involves the underlying construction contracts, not the Indemnity Agreement.  As the Court explained in its previous order, the Indemnity Agreement does not address the same subject matter, bind the same parties, or raise the same issues as the underlying construction contracts.  Although related to the underlying contract claims, the indemnity issues are separate and distinct."  Id. at *4 (record citations omitted).  So too, GAIC's obligation to Verdex for the payments it made to Division III's lower tier vendors – albeit related to the Subcontract performance dispute – is an obligation independent of the performance dispute, involving distinct issues of indemnification.

Because the state and federal proceedings are not parallel, this is not an exceptional circumstance warranting a stay under the Colorado River doctrine.  Nonetheless, the undersigned will review the remaining factors that would otherwise be considered were the state and federal actions deemed to be substantially similar proceedings.

### 2.     First Factor – Jurisdiction Over Property

"[T]he court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." Colorado River, 424 U.S. at 818.  Because neither the state nor federal court has assumed jurisdiction over any property in this matter, this factor

irrelevant and, therefore, does not support GAIC's argument that this is an exceptional circumstance warranting a stay.

### 3. Second Factor – Inconvenience of the Federal Forum

The second factor, inconvenience of the federal forum, focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses." Ambrosia Coal, 368 F.3d at 1332. Here, as the federal forum is located in the Southern District of Florida it is essentially as proximate to the evidence and witnesses as the state forum, which is located in Broward County, Florida, making them equally convenient. This factor, therefore, is neutral and does not support GAIC's argument that this is an exceptional circumstance warranting a stay.

### 4. Third Factor – Potential for Piecemeal Litigation[7]

This factor weighs heavily against a stay by this Court. First, the federal litigation has advanced to the summary judgment stage, and the undersigned has already issued a Report and Recommendation on many of the Verdex payment claims. By contrast, the state court litigation remains at the pleading stage, and the state court has not yet adopted a scheduling order. See Motion at 4 (stating that Division III is proposing to the state court judge a scheduling order).

Second, although GAIC argues that a stay at this time would serve the interests of "judicial economy," GAIC waited nine months after this litigation was commenced, six months after filing (and later withdrawing) its first motion to stay, and one month after

---

[7] Piecemeal litigation occurs when the same issues are presented to different tribunals, resulting in a duplication of effort and possibly different results. See Hendricks v. Mortg. Elec. Registration Sys., Inc., 2013 WL 1279035, at *4 (M.D. Fla. Mar. 28, 2013).

receiving an adverse ruling (Report and Recommendation) on a summary judgment motion to file the instant Motion. GAIC's own lack of diligence belies its argument for "judicial economy." Moreover, Verdex has not asserted, and cannot be compelled to assert, the same claim that has been before this Court since April 2018 as a new claim against GAIC in the state court. As a result, staying this action would only delay the final resolution of Verdex's claim against GAIC on the Payment Bond; it would not avoid piecemeal consideration. See Am. Mfrs. Mut. Ins. Co. v. Stone, 743 F.2d 1519, 1525 (11th Cir. 1984) ("Because the district court cannot force [the plaintiff] to assert its claims as permissive cross claims in the state proceeding, the stay order has not avoided, but has merely delayed, piecemeal consideration of the claims."). Accordingly, GAIC's argument that "[a] stay will promote judicial economy," Motion at 1 (DE 39), is unavailing.

Finally, GAIC argues that a stay would "avoid inconsistent rulings." Motion at 1 (DE 39). But, as noted in the Report and Recommendation, GAIC's indemnification obligations to Verdex are independent of the issues involved in the Subcontract dispute between Verdex and Division III in the state court. See Report and Recommendation at 9 ("[W]hether Verdex or Division III breached the Subcontract is not relevant to the issues before this Court."). Stated differently, this federal action and the state court action involve distinct claims: the indemnification claims on the Payment Bond in this case are independent of the performance claims on the Subcontract in the state court. Accordingly, no ruling on the federal claims will differ from any subsequent ruling on the state claims.

In sum, abstaining would not serve judicial economy by avoiding piecemeal litigation. To the contrary, it would frustrate judicial economy by delaying resolution of the remaining payment claims under the Payment Bond. Additionally, this federal action has

proceeded much further than the state action and appears to be on track to be concluded prior to the state action. And no ruling emanating from this Court on the Payment Bond will differ from any subsequent state court ruling on the Subcontract performance dispute. Accordingly, no exceptional circumstances exist that would warrant staying this federal case.

       5.       Fourth Factor – Order in which the Parties Obtained Jurisdiction

The fourth factor, the order in which the parties obtained jurisdiction, also weighs against a stay. As to this factor, the Eleventh Circuit has instructed that courts are to focus not on which complaint was filed first, but on the amount of progress that has been made in each case. Ambrosia Coal, 368 F.3d at 1333. In this federal litigation, the parties have agreed to a trial schedule, and the undersigned has issued a Report and Recommendation on many of the Verdex payment claims, narrowing the issues to questions of fact regarding the remaining claims. By contrast, the state court litigation remains at the pleading stage, discovery is now commencing, and the state court has yet to adopt a scheduling order. See Motion at 4 (stating that Division III is proposing to the state court judge a scheduling order). The federal court proceeding, therefore, appears closer to a final resolution than the state court proceeding. Accordingly, this factor does not support GAIC's argument to stay the federal proceeding.

       6.       Fifth Factor – Application of State or Federal Law

The fifth factor looks to whether state or federal law is to be applied. Because this matter involves an issue of contractual indemnification, Florida law governs. Although this factor weighs in favor a stay, standing alone it does not in this instance warrant a stay. Federal courts routinely apply Florida contract law, and the contract issues here are not

11

complex. See Noonan South, Inc. v. County of Volusia, 841 F.2d 380, 382 (11th Cir.1988) (explaining that the application of Florida law alone in a federal diversity case did not favor Colorado River abstention where no "complex questions of state law" were at issue). In sum, this factor does not warrant a stay under Colorado River as the case does not involve "complex questions of state law that a state court might be best suited to resolve." Ambrosia, 368 F.3d at 1334 (11th Cir.2004).

       7.      Sixth Factor – Adequacy of State Court to Protect Parties' Rights

The sixth factor, the adequacy of the state court to protect the rights of the parties, is also neutral. Neither this Court nor the Broward Circuit Court is inadequate to protect the parties' rights. See Ambrosia Coal, 368 F.3d at 1334 (sixth factor only weighs in favor of or against abstention "when one of the fora is inadequate to protect a party's rights"); accord Jackson-Platts v. Gen. Elec. Capital Corp., 727 F.3d 1127, 1143 (11th Cir. 2013) (explaining that where both fora were adequate to protect the parties' rights, the sixth factor was neutral). Inasmuch as this factor is neutral, it does not support GAIC's argument that this case presents an exceptional circumstance warranting a stay.

       8.      Final Factor – Reactive Nature of Instant Litigation

Courts are also permitted to consider the "vexatious or reactive nature" of either litigation. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 17 n.20; Ambrosia Coal, 368 F.3d at 1331 (citation omitted). Here, GAIC alleges that Verdex filed the federal action as a "defensive tactical maneuver." Motion at 11 (DE 39). According to GAIC, Verdex did so "to obtain a judgment against GAIC to gain leverage in the State Court Action . . . . Since each party will advance the same arguments in this

action that they are advancing in the parallel State Court Action, there is no other explanation for Verdex's motive in filing this action" Id.  The undersigned does not agree.

The arguments in the state and federal actions are not the same.  In support of its summary judgment motion, Verdex argued that it had an unconditional right to be indemnified under the GAIC Payment Bond for the monies it paid to Division III's lower tier subcontractors.  Whether responsibility for breach of the Subcontract lies with Verdex or with Division III was not at issue.  Moreover, Verdex cannot be deemed vexatious for seeking to enforce its rights to indemnification under the Payment Bond and for seeking to prevent the state court litigation from delaying that right.  Similarly, nothing that Verdex has done in this litigation has prevented Division III from pursuing its claims under the Subcontract in the state court.  This factor, therefore, does not support GAIC's argument for a stay.

### 9. Summary

In sum, the undersigned finds that the state proceeding between Verdex and Division III involving the breach of the Subcontract and the instant federal litigation between Verdex and GAIC involving the indemnification provision under the Payment Bond are not parallel proceedings.  Furthermore, in assessing the Colorado River factors under the Eleventh Circuit's guidance in Ambrosia Coal, the undersigned finds that only one of the several factors – the fifth (the application of state or federal law) – weighs in favor of a stay.  Nonetheless, the fact that Florida law governs this dispute – standing alone – does not in this instance warrant a stay.  The case does not involve "complex questions of state law that a state court might be best suited to resolve." Ambrosia Coal, 368 F.3d at 1334 (11th Cir.2004).  Considering the totality of the factors, the undersigned concludes that this case

does not present "exceptional" circumstances that would warrant a stay of the federal proceedings under the Colorado River doctrine.

III.  CONCLUSION

For the reasons set forth above, it is respectfully RECOMMENDED that Great American's Motion to Stay Proceedings Pending Disposition of Parallel State Court Proceedings and Incorporated Memorandum of Law in Support Thereof (DE 39) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2017).

DONE AND SUBMITTED in Chambers, Fort Lauderdale, Florida, this 16th day of January 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies via CM/ECF to:

Honorable Darrin P. Gayles
United States District Judge

All counsel of record